# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CR417-051 |
| NATHANIEL PUGH, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Nathaniel Pugh, charged with possession of a firearm as a felon, seeks to suppress evidence seized while he was hospitalized for a gunshot wound and asks for a hearing on the validity of the resultant search warrant. Doc. 67. His motion is without merit and should be denied.

## I.   BACKGROUND[1]

On November 4, 2015, officers responded to a report of gunshots exchanged between "a white vehicle and a brown vehicle." Doc. 67,

---

[1] Pugh's affidavit, submitted in support of his motion pursuant to S.D. Ga. Crim. L. R. 12.1, states only that on November 4, 2015, he "was shot by a firearm" and due to the "terrible pain" and "possible shock" from his wound, does not "remember any conversations [he] had with anyone, [including] medical personnel." Doc. 67, Exh. B. He relies exclusively upon -- and the Court thus construes his motion as stipulating to -- the facts as set forth by the Government in the search warrant. *Id.*, Exh. A (Search Warrant).

Exh. A.  A few minutes later, Pugh crashed his white Ford Fusion into several parked cars in front of Memorial Hospital Emergency Room.  *Id.*  Hospital personnel began treating him, as he'd been shot in the chest, and Detective Puhala responded to the scene.  *Id.*  A nurse approached Det. Puhala and informed him that while treating defendant, "he told her to make sure his glovebox was locked because there was something in there he did not want the police to know about."  *Id.*  Det. Puhala was unable to talk with Pugh, however, because defendant "was unable to speak, [ ] had a tube in his mouth and was unconscious."  *Id.*

   Det. Puhala collected defendant's wallet and cell phone as evidence, and a forensic officer, T. Selva, took custody of Puhala's clothing and assured the Ford Fusion was properly secured and towed to the police annex.  Doc. 67, Exh. A.  While hanging the clothes up to dry, Officer Selva found an empty "black nylon gun holster concealed on the inside part of [defendant]'s jeans."  *Id.*  After interviewing a witness to the original shooting, Detective Rowan applied for and secured a search warrant to search the Ford Fusion.  *Id.*  A search of the vehicle turned up a firearm, ammunition, cocaine, pills, bullet fragments, projectiles, and shell casings.  Doc. 71 at 2.

2

Pugh wants the holster suppressed and a *Franks* hearing on the validity of the search warrant issued based on his statement to the nurse that he'd rather not alert police to certain things squirreled away in his car. Doc. 67.

## II.  ANALYSIS

### A.  Defendant's Bloody Clothing

Pugh argues that the warrantless search of his clothing violated his constitutional rights, as he did not give officers permission to suss through them for contraband and hospital staff could not give permission in his stead. Doc. 67 at 2-3. But "[i]t is well established that under certain circumstances the police may seize evidence in plain view without a warrant." *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971). Evidence may be seized without a warrant where (1) the officer is lawfully in a position to view and access the object seized, and (2) the incriminating nature of the object seized is "immediately apparent." *Horton v. California*, 496 U.S. 128, 136 (1990); *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006).

Here, it is undisputed that Officer Selva was lawfully in the emergency room responding to Pugh, a potential suspect or victim, with

a gunshot wound to the chest. And his bloody clothing had clear evidentiary value to the investigation of the reported gun battle mere minutes before Pugh careened into the emergency room parking lot. Pugh's clothing was properly seized pursuant to the plain view doctrine; his consent was not needed. *See, e.g., United States v. Franklin*, 64 F. Supp. 2d 435 (E.D. Pa. 1999) (declining to suppress clothing evidence where the officer collected the cut-up, bloody clothing from the hospital floor and placed defendant under arrest) and *United States v. Davis*, 657 F. Supp. 2d 630 (D. Md. 2009) (declining to suppress clothing evidence where officers secured defendant's pants and boxer shorts in a bag after they were removed by hospital personnel, even after it was temporarily stored in a shelf behind the hospital bed), cited in *United States v. Howard*, 2011 WL 1457179 at *3 (N.D. Ga. Feb. 9, 2011) (declining to suppress bloody clothing collected from the hospital emergency room floor by officers responding to defendant's shooting); *see also Texas v. Brown*, 460 U.S. 730, 737 (1983) (explaining that "an unduly high degree of certainty as to the incriminatory character of evidence" is not necessary to the application of the "plain view" doctrine); *id.* at 741-41 (rather, the plain view doctrine requires only

that the officers have probable cause to believe that the object they are viewing is contraband or evidence of a crime); 3 Wayne R. Lafave, Search & Seizure § 6.7(a), 481 & n. 7 (5th ed. 2017).[2]

### B. The Warrant

Defendant also argues that the search warrant (for the search of his vehicle) was invalid because his

> . . . medical condition at the time of his alleged statement to the hospital nurse, relied upon in the affidavit, was a material omission that should have been disclosed [to] the judicial officer. [He] had just been shot, had lost a lot of blood and does not remember the facts surrounding his arrival at the hospital. [Defendant]'s alleged statement that "there was something [in the glovebox] that he did not want the police to know about" is the crucial piece of the affidavit that established probable cause to search the vehicle that [he] was driving in the hospital parking lot. Recall that [he] arrived AS A VICTIM OF A GUNSHOT WOUND.

---

[2] Even if not in plain view, Pugh's clothing was permissibly collected under the exigent circumstances exception. "Exigent circumstances arise when authorities have reason to believe that evidence is in danger of being destroyed or removed." *United States v. Mikell*, 102 F.3d 470, 475 (11th Cir. 1996). "The test of whether exigent circumstances exist is an objective one. The appropriate inquiry is whether the facts would lead a reasonable and experienced police officer to believe that evidence might be destroyed or removed before a warrant could be secured." *Id*. Here, the clothing could have been destroyed or removed from the emergency room before a warrant could be secured or the chain of custody broken, and whatever evidentiary value they had lost to investigating officers. *Howard*, 2011 WL 1457179 at *5. Exigent circumstances -- the need to preserve evidence at risk of loss -- allowed Officer Selva to seize Pugh's bloody clothing.

Doc. 67 at 4 (citing *Franks v. Delaware*, 438 U.S. 154, 156 (1978)[3]). The omission of his medical condition at the time he made the statement to the responding nurse, he argues, "casts doubt upon the probable cause in the warrant." Doc. 67 at 3.

The warrant, however, explicitly states that Pugh "had been shot in the chest" and, by the time Det. Puhala responded, he "was unable to speak, because he had a tube in his mouth and was unconscious." Doc. 67, Exh. A. It is unclear precisely what information about his medical condition was thus "omitted" from the warrant. *See* doc. 71 (contending that "[t]he 'omission' that forms the crux of Defendant's allegation is not an omission at all, as it was evident from the facts contained in the affidavit, the dire state Defendant was in when he arrived at the hospital.").

---

[3] In *Franks*, the Supreme Court held that a search warrant may be invalidated if the affiant made statements that are deliberately false or that demonstrate a reckless disregard for the truth. 438 U.S. at 171-72; *see United Staes v. Martin*, 615 F.2d 318, 327-29 (5th Cir. 1980) (extending *Franks* to material omissions that, if included in the affidavit, would serve to defeat probable cause); *see also United States v. Wuagneux*, 683 F.2d 1343, 1355 (11th Cir. 1982) ("allegations of negligence or innocent mistake" by the affiant, however, are "insufficient" to invalidate a warrant). Importantly, *even if* the alleged misrepresentations were made intentionally or with reckless disregard for the truth, where the remaining information in the affidavit is sufficient on its own to establish probable cause for the search, the warrant remains valid. *Franks*, 438 U.S. at 171 ("if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content to support a finding of probable cause, no hearing is required.").

Moreover, defendant's medical condition was not *material* to an overall finding of probable cause. Even without Pugh's statement to the nurse, there remained: (1) a 911 phone call stating that two cars were involved in the shootout and the white car fled the scene; (2) five minutes later defendant crashed his white Ford Fusion into the emergency room parking lot, sporting a gunshot wound to the chest; (3) an empty gun holster was found in Pugh's properly seized, bloody clothing; and (4) a witness reported seeing a white car flee the scene of the shootout. Doc. 67, Exh. A. Even if Pugh's statement were excluded, these circumstances together were more than enough to enable the reviewing magistrate "to make a practical, common sense decision [that there existed] a fair probability that contraband or evidence of a crime" would be found in defendant's white car. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). No *Franks* hearing is needed to determine that the warrant was supported by probable cause.

### III.  CONCLUSION

Accordingly, Nathaniel Pugh's motion to suppress and motion for a *Franks* hearing on the validity of the warrant should be **DENIED**. Doc. 67.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this <u>19th</u> day of October, 2017.

_/s/ G. R. Smith_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA